ISAAC PARKER.
SAMUEL PUTNAM
S. S. WILDE.
MARCUS MORTON

## PLYMOUTH, MAY TERM 1792.

SAMUEL THATCHER *versus* THOMAS OMANS *et al.**

Husband and wife being seised in fee of land in her right, in consideration of the marriage and of twenty shillings, by deed acknowledged and recorded, "gave, granted, bargained, sold, enfeoffed, and conveyed " the same to J. S. in fee, to the use of the husband and wife, their heirs and assigns, and the heirs and assigns, of the longest liver of them. *Held,* that the deed should be taken, not as a bargain and sale or covenant to stand seised to uses, whereby there would be a use upon a use, but as a feoffment to uses ; so that J. S. stood seised to the use limited in the deed, and then the statute of uses executed the use, thereby making the husband and wife complete owners of the land as joint tenants in fee.

In this action Thatcher demanded against Omans and George B. Nye possession of one undivided seventh part of a tract of land in Rochester ; alleging that Sarah Gill, wife of Moses Gill, on the 1st of August, 1771, was seised in fee of the premises, and that on the 3d of August she died so seised, without issue, and the right descended to the demandant, and that the tenants entered, &c. Moses Gill was admitted to defend, and he and the tenants pleaded that the tenants were not guilty of the disseisin complained of, and thereupon issue was joined. The jury found a special verdict, stating that on the 4th of December, 1775, Sarah Gill, wife of Moses Gill, was seised in fee simple ; that on the same day Moses and Sarah being seised in fee in her right, and being of full

---

* See a report of this case in 4 Dane's Abr. 257.

age, made and executed the deed hereafter mentioned, to one John Scott, for the considerations therein expressed, which deed was thereupon duly acknowledged and recorded ; that Sarah died on the 5th of August, 1771, having never had issue, and that the demandant was one of her heirs at law ; but whether, &c.

*Parsons* and *Davis,* for the demandant.

*Sullivan* and *Lincoln,* for the tenants.

DANA C. J.* In this case the only question submitted by the special verdict to the consideration of the Court, is, whether the demanded premises descended to the next of kin and heirs at law of Sarah, the late wife of Moses Gill. If so, the jury find the appellees guilty ; otherwise, not guilty.

The decision of this question depends wholly upon the effect of the deed referred to by the verdict, whereby Moses Gill and the said Sarah, in consideration of the marriage heretofore solemnized between them, and for the settlement of the messuages, lands, tenements, and hereditaments, whereof they, in her right, were seised in fee, (among which were the demanded premises,) and also for and in consideration of twenty shillings to them paid by John Scott, did give, grant, bargain, sell, enfeoff, and convey to the said John Scott all the said messuages &c., to have and to hold all and singular the afore-granted messuages &c., to him the said John Scott and his heirs, *to the use and behoof of them the said Moses Gill and Sarah his wife and their heirs and assigns for ever, and the heirs and assigns of the longest liver of them, and to no other use or purpose whatever.*

The verdict finds the deed to have been duly made, acknowledged, and recorded.

As there is no precedent of any adjudication in a similar case to be found in any of our courts, and it would be vain to look elsewhere for them, and as this may become a leading case, I shall not content myself with merely declaring the opinion I have deliberately formed, but will open and explain the grounds and principles of it. To this end, I will first

**523**

---

* The public are indebted to *Richard H. Dana,* Esq. for this opinion, which is copied from a manuscript of his father, the late Chief Justice *Dana.*

Thatcher
*v.*
Omans.

state the several points which have been made in the case at the bar.

It is contended for the heirs at law of Sarah Gill,

1. That no estate passed from her in virtue of this deed, because being a feme covert, seised in her own right of the demanded premises, at common law she could convey by fine or recovery only, *where no consideration is necessary*.

2. That a feme covert being incapable of *receiving* any consideration, such conveyances of hers, wherein no consideration is necessary, are alone binding upon her.

3. That there is no usage of such a conveyance as the present one known in this country, so as to make it a common assurance.

4. Nor is it authorized here by any statutes. Hence,

5. That not being supported either by the common law of England, or by any usage or statute of our own, it can have no good foundation, and is therefore a mere nullity.

6. That the doctrine of uses is the same here as in England : it is void, therefore, because it creates a use upon a use, whether it be considered as a bargain and sale, or a covenant to stand seised to uses.

7. That if it should be considered as a covenant to stand seised to uses, it is void also, because a husband may covenant to stand seised of *his* estate to the use of his wife, but husband and wife cannot covenant to stand seised of the estate of *the wife* to the use of the husband.

On the other part it has been argued,

1. That if the husband and wife may convey *her* inheritance by fine or recovery in England, they may do so here *by deed only*, in virtue of the late province law, 9 *Will*. 3, *c.* 7.

2. That under this statute femes covert have always joined with their husbands in conveying *by deed* the real estates of which they have been seised in right of the wife.

3. That the deed in question having both a *valuable* consideration, viz. twenty shillings paid by Scott to Gill and his wife, and a *good* one, viz. marriage solemnized between them, is sufficient to raise a use, either by way of bargain and sale, or by covenant to stand seised to uses.

4. That as to the objection that the deed cannot *so* operate,

because there cannot be a use upon a use, — if the use cannot take effect, the deed shall so far operate as to convey the fee to Scott; so that Sarah Gill did not die seised.

Although it be true, that by the common law of England a feme covert can convey her inheritance by fine or recovery only, yet this is not because no consideration is necessary in such conveyances, but because it is a principle of the common law, that conveyances or contracts of femes covert, except by some *matter of record*, are absolutely void. 2 Bl. Com. 293.

Hence a deed acknowledged by husband and wife, shall by the common law be enrolled only for the husband, and not for the wife, by reason of the coverture ; and though it be enrolled for both, it bindeth her not. 2 Inst. 673.

But if the reason why a feme covert might convey her inheritance by fine or recovery, was, because no consideration is necessary therein, upon the same principle she might have conveyed by feoffment, where likewise no consideration is necessary.

Though it is said, a deed made *without consideration* is, as it were, of no effect, for it shall be construed to enure only to the use of the grantor himself; Noy's Tenures, 6 ; Co. Lit. 23 *a* ; and equity will presume it so meant ; yet if a feoffment be made without any consideration, and it is ex-  ressly declared to be to the use of *another*, nothing shall be presumed to the contrary. Which shows such a feoffment *without consideration* would be good to raise a use. 2 Bl. Com. 296, 330.

But *Holt*, in the case of *Shortridge* v. *Lamplugh*, says, " It would be hard judges should construe *such* a feoffment to the use of the feoffor, where it does not so appear ; and they must be intended to be made to the use of the feoffee ; especially since the *St.* 27 *H.* 8 ; for now if a feoffment should not be intended to be to the use of the feoffee, it would be vain and to no purpose. 2 Ld. Raym. 801 ; *S. C.* 3 Salk. 387. The reason is plain, because the statute would unite the legal estate and the use in the feoffor, and place it exactly where it was before.

525

Further, to say that a feme covert can convey only by fine or recovery, because she is *incapable* of *receiving* any

Thatcher
v.
Omans.

consideration, would be to destroy the general mode of con veying their inheritances, viz. by joining with the husband in making a deed of them to a third person: which has become the most common assurance for transferring the inheritances of femes covert in this country ; and for that reason not now to be shaken, any more than their conveyances of them by fine or recovery in England. 2 Bl. Com. 339.

The mode of transferring the inheritances of femes covert by husband and wife, *by deed only*, is unknown to the common law of England, nor does it depend, perhaps, upon any usage of this country prior to the late province law of 9 *Will.* 3, *c.* 7, which enacts, "That henceforth all deeds or convey- ances of any houses or lands, within this province, signed and sealed by the party or parties granting the same, *having good and lawful right or authority thereto*, and *acknowledged* by such grantor or grantors before a justice of the peace, and *recorded at length in the registry of the county* where such houses or lands do lie, *shall be valid to pass the same, without any other act or ceremony in the law whatsoever.*"

By the common law of England (which our ancestors brought with them, so far as it was applicable to their circumstances) no freehold estate in any corporeal hereditaments could be created or transferred, but by livery of seisin, — agreeably to the maxim, *Feudum sine investiturâ nullo modo constitui potuit,* — or by matter of record, viz. by fine or recovery. 2 Bl. Com. 311, 314, 348, 357.

This statute was evidently made to introduce a new mode of creating or transferring freehold estates in corporeal heredi- taments, viz. by deed signed, sealed, *acknowledged* and *re- corded*, as the statute mentions. It does not prescribe any particular kind of deeds or conveyances, but is general and extends to all kinds of conveyances. The words are, "all deeds or conveyances of any houses, &c., signed, &c., by the party granting the same, *having good and lawful right or authority thereto*," that is, having a good and lawful right to any houses, &c., and authority to convey the same, "*shall be valid to pass the same, without any other act or ceremony in tne law whatsoever.*"

It is to be considered, therefore, whether Moses Gil' aud

his wife had, at the time of making the deed in question, good and lawful right to the demanded tenements, and authority to convey the same by *any* mode of conveyance whatever.

Their right and authority to convey the tenements is not denied, provided it had been done by jointly levying a fine or suffering a common recovery for the purpose ; the mode only in which it has been done is objected to.

It is indeed said in one of the objections, that a husband may covenant to stand seised of *his* estate to the use of *his wife ;* but that husband and wife cannot covenant to stand seised of the estate of *the wife* to the use of the husband.   Suppose this to be true, and that a feme covert cannot at common law make any deed, yet I find forms of deeds wherein the husband covenants that he and his wife will levy a fine of the lands of the husband and wife or *either of them*, to enure to the use of the husband and wife, and *their heirs and assigns for ever* 2 Bridgm. Conv. 170.   Which points out a mode of conveying her inheritance to her husband and herself as joint tenants.

This statute was passed in 1697, nearly a century ago, and I believe not a single instance can be found in this country wherein recourse has since, if ever, been had to a fine or recovery to transfer the inheritance of a feme covert ; but to deed only, executed, acknowledged, and recorded as the act requires, and in the manner this is done, save only the form of the deed.

Nay, it is admitted also that husband and wife may, by their joint deed, in virtue of this statute, or at least by the usage of this country, convey her inheritance to a third person ;[1] and if it is intended to be revested in them by a different

527

---

[1] See Revised Stat. *c.* 59, § 2; *Fowler* v. *Shearer*, 7 Mass. R. 14; *Colcord* v. *Swan*, 7 Mass. R. 291 ; *Dudley* v. *Sumner*, 5 Mass. R. 463; *Lithgow* v *Kavenagh*, 9 Mass. R. 161; *Durant* v. *Ritchie*, 4 Mason, 45 ; *Whiting* v *Stevens*, 4 Connect. R. 44 ; *Whitbeck* v. *Cook*, 15 Johns R. 483; *Gordon* v. *Haywood*, 2 N. Hamp. R. 402 ; *Elliot* v. *Sleeper*, 2 N. Hamp. R. 525.

In order to render the deed of land, held in right of the wife, effectual to pass the fee simple estate, it is not sufficient that she sign and seal the deed but she must also join her husband *as party to the conveyance.   Payne* v. *Parker*, 1 Fairfield, 178.   See *Lufkin* v. *Curtis*, 13 Mass. R. 223; *Catlin* v. *Ware*, 9 Mass. R. 218.

The wife will not be bound by any of the covenants contained in such joint

tenure, that such third person may by another deed convey it back to them accordingly.

This has undoubtedly been the most frequent or customary method of effecting such a purpose.

But is it the safest, best, or only legal mode of doing it ? I think it is neither. For laying aside the question, whether two deeds made for the sole purpose of effecting *one* design, ought not to be considered as *one* instrument, and if so, they must rest upon the same principle as the present deed, many inconveniences might spring out of this mode of two deeds, which might wholly prevent the design of the parties from taking effect. The feoffee might convey the lands to others ; they would be subject to be attached for his debts ; he might die before a second deed could be executed, when the tenements would descend to his heirs ; and his wife, if he had one, would be dowable of them, if she should refuse to release her dower in the second deed.

All which hazards are avoided by this mode of conveyance by one deed to uses ; whereby the husband and wife convey her estate, not to themselves, as has been said, but to a third person, for the real uses intended ; who stands seised thereof accordingly ; the statute of uses annexes the estate to the use, and so gives them a complete title. 2 Bl. Com. 333.

But it is further objected, that the deed in question must operate as a bargain and sale, or a covenant to uses, and that in such cases there is a use upon a use, which cannot be.

That it may operate as either, if necessary to effectuate the intention of the parties, there can be no doubt, because it contains both a *good* consideration, as marriage had, and a *valuable* one, twenty shillings paid, which are sufficient to raise a use the one way or the other.

It is true, the courts of law in England have held that no use could be limited upon a use ; and that when a man bargains

deed. Revised Stat. *c* 59, § 2. See *Fowler* v. *Shearer,* 7 Mass. R. 14 ; *Den* v. *Crawford,* 3 Halsted, 90 ; *Whitbeck* v. *Cook,* 15 Johns. R. 483 ; *Nicholson* v. *Helmsley,* 3 Harr & M'Hen. 409.

And such deed will not *estop* the wife from setting up a subsequently acquired interest in the same lands. *Jackson* v. *Vanderheyden,* 17 Johns. R. 167.

and sells his lands for money, which raises a use by implication to the bargainee, the limitation of a further use to another person is repugnant, and therefore void. 2 Bl. Com. 335, 336 ; *Tyrrel's Case*, Dyer, 155 ; *S. C.* 1 And. 37, *pl.* 96 ; *Corbet's Case*, 2 And. 136 ; Lill. Pract. Conv. 15, 20, n. *(b)* ; *Dillon* v. *Fraine,* Poph. 81.

This objection seemed to be strongly relied upon at bar, and is indeed the most plausible of them all.

It is well known to the counsel on both sides, that the deed in question has been considered by a late learned judge (*Trowbridge*), either as a deed of bargain and sale, or as a covenant to stand seised to uses ; and this probably gave rise to this last-mentioned objection, which may have brought on the present suit. But it should be remembered, that he contemplated the case upon narrower ground than it now stands upon, and was considering only whether the deed would operate in either of these ways · or in other words, whether the design of it could be executed in any way but by fine or recovery to uses, or in the common mode of this country, by *two* deeds, as was then, and is now contended. The objection or idea of a use upon a use had not then been raised.

If the case turned upon the doctrine of a use upon a use being void in law, it would be necessary for me to go fully into it ; and to see whether it ought to be admitted in this country, where we have no court of equity to enforce the execution of the *second* use under the name of a trust, or in any shape whatever. 2 Bl. Com. 336. I will only observe respecting this doctrine, that it has been severely censured both by Judge *Blackstone* and Lord *Mansfield*. The latter says, " It was not the liberality of the courts of equity, it was the absurd narrowness of the courts of law, resting on literal distinctions, which in a manner repealed the statute of uses, and drove *cestui que trusts* into equity." 2 Doug. 774.

Without meddling further with this doctrine, let us see whether a use upon a use does in fact exist in this case. This, it seems, must depend upon the nature of the deed in question. If it should be taken as a deed of bargain and sale, then there is a use upon a use, because, as has been said

already, a freehold in corporeal hereditaments cannot be created or transferred at common law but by matter of record, or by livery of seisin.

Therefore deeds of bargain and sale do not of themselves transfer the *legal* estate ; they are only real *contracts* upon valuable consideration for passing lands, &c. whereby the bargainor does not convey, but contracts· to convey the land to the bargainee, and becomes by such bargain a trustee for or seised to the use of the bargainee. 2 Inst. 672 ; 2 Bl. Com. 338 ; *Sharington v. Strotton*, Plow. 301. The property or possession of the soil remained in the bargainor ; the bargainee had neither *jus in re* nor *ad rem*, but only a confidence or trust ; or in other words he was entitled to the use or profits of the land : for which, however, he had no remedy by the common law, but only in chancery ; which would compel the bargainor (who had received a valuable consideration of the bargainee) to obey the directions of the bargainee with regard to the disposition of the use or profits of the land. 2 Bl. Com. 137 ; *Chudleigh's Case*, 1 Rep. 121 *b ;* Hawk. Abr. 363 ; Plow. 301.

Thus the matter stood before the making of the statute of uses, 27 *H.* 8, *c.* 10, which enacts, that when any person shall be seised of lands, &c. to the use, confidence, or trust of any other person, the person entitled to the use, shall from henceforth stand and be seised or possessed of the land, &c. of and in the like estate as he has in the use, &c. and that the estate of the person so seised to uses, shall be deemed to be in him who has the use, in such quality, manner, form, and condition, as he had before in the use.

Now, though the statute *executes* the use, by conveying the possession to the use, and transferring the use into possession, thereby making *cestui que use* complete owner of the lands, &c. as well at law as in equity, yet it does not abolish the conveyance to uses, but only annihilates the intervening estate, and turns the interest of the *cestui que use* into a *legal* instead of· an *equitable* ownership. 2 Bl. Com. 333. The use still exists. The bargain and sale first vests the use, and then the statute vests the possession. 2 Bl. Com. 338 ; *Eustace v. Scawen*, Cro. Jac. 696.

558

So that notwithstanding the operation of the statute, Gill and his wife, if the deed is taken to be a deed of bargain and sale, must, in the first instance, stand seised to the use of Scott, who, by the terms of the deed, is to hold "to the use of them, their heirs and assigns for ever, and the heirs and assigns of the longest liver of them, and to no other use whatsoever."

But supposing that here is clearly a use upon a use, and also that the doctrine respecting it, established in the courts of law in England, should be received in its full extent in this country, what would be the consequence, as applicable to this case? Is the deed itself to be considered as null and void, so that no estate passed in virtue of it to Scott, as is contended, or is the use therein limited *to themselves*, alone to be considered null and void? On the first supposition, Gill's wife must have died seised of the demanded premises, and they would descend to her heirs at law; otherwise, not. Where a *feoffment* is made to A and his heirs, to the use of B and his heirs, in trust for C and his heirs, it is held that the statute *executes* the *first* use in B, and that the *second* is a mere nullity; not that the deed itself is a nullity. 2 Bl. Com. 335, 336; 1 And. 37; 2 And. 136.

This is a strong case to show what Lord *Mansfield* calls "the absurd narrowness of the courts of law." For it is evident, says *Blackstone*, and so must every one say, "That B" (the first *cestui que use*) "was never intended by the parties to have any beneficial interest" in the lands. Yet the substantial part, the intention of the parties, clearly expressed in the feoffment, was made to yield to what he calls "technical scruples."

However this may be, to clear away the difficulty of a use upon a use, and to effectuate the manifest intention of the parties, I shall consider the deed neither as a bargain and sale, nor as a covenant to stand seised to uses; but as a *feoffment* to uses, by which the *legal* estate passes to the feoffee. The case just cited proves this; otherwise the statute could not have executed the use to B as the *first cestui que use.*

But a more particular consideration of the doctrine of uses may throw more light upon this point.

Conveyances to uses are of three kinds only : first, by bargain and sale ; secondly, by covenant to stand seised to uses ; and thirdly, by feoffment, fine, or recovery to uses. Bac. Abr. *Uses, E ; Heyns* v. *Villars,* 2 Sid. 158.

And uses may be raised two ways : first, by *transmutation* of the *estate,* as by fine, common recovery, or feoffment ; and secondly, *without* transmutation of the estate, by bargain and sale, or covenant to stand seised to uses. Co. Lit. 271 *b ;* Hawk. Abr. 363 ; *Sharington* v. *Strotton,* Plow. 301, 303.

If a man bargains and sells lands to another and his heirs, and before the deed be enrolled he levieth a fine, or maketh a feoffment to the bargainee and his heirs of the same lands ; and after, and within the six months, the deed is enrolled, the bargainee shall be in by the fine or feoffment, and not by the bargain and sale, both by reason of the word *only* (in the statute), and that *the estate by the common law vested* shall be preferred. 2 Inst. 671, 672.

By the common law a feoffment puts the *legal* estate out of the feoffor, and he hath only a trust left. 2 Sid. 157 · 3 Salk. 387.

*Cestui que use* could not at common law alien the *legal* interest of the lands, without the concurrence of his feoffee, *to whom he was accounted tenant at sufferance.* 2 Bl. Com. 331 But the feoffee might sell the land from *cestui que use,* and he had but his remedy in chancery. Noy's Ten. 16. The land itself was liable to escheat whenever the blood of the feoffee to uses was extinguished by crime or defect.

The feoffee was always taken as the owner of the land, and at common law was the very tenant. 3 Salk. 386.

If a feoffment was made to A and his heirs, to the use of B and his heirs, A, the feoffee and *terre tenant,* had the legal property and possession of the land, but B, the *cestui que use,* was in conscience and equity entitled to have the profits and disposal of it. 2 Bl. Com. 328.

But the statute having united the estate to the use, feoffees to uses have now no estate or interest at all, but in respect of the contingent estates and uses limited in the deed. " They are but conduit pipes to lead the uses." 3 Salk. 386 ; Noy's Ten. 15.

I have cited these authorities merely to show the difference of a use raised by feoffment, and by bargain and sale, or by covenant to stand seised to uses ; that when raised by feoffment, the feoffor, having parted with the legal estate, cannot stand seised to the use of the feoffee, but when raised by bargain and sale, or covenant, the bargainor or covenantor, retaining in themselves the *legal* estate, do stand seised thereof to the use of the bargainee or covenantee.

Apply this principle to the present case, and if the deed in question is to be taken as a feoffment, it is clear there cannot be a use upon a use ; there being but one use limited by the deed itself, and none created by the operation of law.   Here, then, is the great question in this case.

It seems evident to me, that a deed executed, acknowledged, and recorded as our statute requires, cannot be considered as a bargain and sale, because the legal estate is thereby passed without the operation of the statute of uses, in as ample a manner as by a feoffment at common law, accompanied with the ancient ceremony of livery of seisin.

Besides, I have real doubts whether with us there can be a proper deed of bargain and sale partaking of the nature of that in England, so far as to require the operation of the statute of uses to give it effect, notwithstanding our statute makes use of the term.

Feoffment is derived from the word *feoffare* or *infeudare*, to *give one a feud ;* and is properly *donatio feudi*.   And it may be defined, the gift of any corporeal hereditament to another.   2 Bl. Com. 310.

But by the mere words of the deed, the feoffment is by no means perfected.   There remains a very material ceremony to be performed, called livery of seisin ; without which the feoffee has a mere estate at will.   2 Bl. Com. 311.

Now by the common law of England, *no deed*, however aptly expressed to give a fee or a feud, can pass one, without it is accompanied with livery of seisin.

Yet it seems to be a legal idea, that whatever passes or gives a feud, though unaccompanied in fact with livery of seisin, may with propriety be considered as a feoffment, or tantamount thereto, as it hath the whole effect of a deed of feoff-

533

ment accompanied with livery of seisin. Thus Lord *Coke* calls a fine a feoffment of record. Co. Lit. 50 *a*. And *Blackstone*, aiming at more accuracy, calls it an acknowledgment of a feoffment on record, and says it has at least the same force and effect with a feoffment, in the conveying and assuring of lands    2 Bl. Com. 348.    So a conveyance by lease and release is said to amount to a feoffment.    2 Bl. Com. 339.

Now the *St.* 9 *Will.* 3, *c.* 7. declares, that deeds shall be valid to pass lands, when they are accompanied with the extra circumstances of *acknowledgment* and *recording*, without any other act or ceremony in the law whatever; and, of consequence, they may pass them without the act of livery of seisin.    Nay, the statute goes further, and makes them good and effectual in law to hold lands against the grantor or grantors and their heirs, even without acknowledgment or recording; so that as to them the fee passes by the bare execution of the deed.

Supposing the difficulty of a use upon a use to be cleared away, by considering this deed as a feoffment to uses, I am sensible the authorities to this point do not apply to the case of a feme covert, who by the common law of England can make no deed.

Yet if there is any mode by which husband and wife may *there* convey her inheritance to a stranger and to themselves, the same may be done here in virtue of our statute by deed executed, acknowledged, and recorded.    Not, indeed, directly to themselves, for in contemplation of law they are but one person, but indirectly they may do it.

Now it is done in England by the husband's covenanting with a third person that he and his wife shall levy a fine for such purpose; which being done, completely executes the design.    2 Bridgm. Conv. 170.    *Vid. ante, p.* 526.

By the deed in question, Gill and his wife make a feoffment of her inheritance to Scott, to the use limited in the deed, that is to say, to themselves as joint tenants in fee.

**534**    Here is no direct conveyance to each other, or to themselves. But the conveyance is to a third person who stands seised to the use limited in the deed. And then the statute

of uses, and not the act of the grantors or the deed itself, executes the use, or unites the legal estate which is in Scott, to the use, thereby making Gill and his wife complete owners of the lands.[1]

I am unable to discern any solid reason why this mode of conveying the inheritances of femes covert ought not to be deemed as valid as the common law mode, or our more usual one, of the husband and wife first making a deed of them to a third person, with a view only and for the intent that such third person should reconvey them to the husband and wife, to hold as shall be agreed upon between all the parties.

The objection, that this particular form of conveyance is not supported by common law, or by any statute or usage of our own, does not appear to me of great force.

We know the origin of fines, recoveries, feoffments to uses, deeds of bargain and sale, covenants to uses, and leases and releases. These were all once novel, but have now become common assurances, though some of them were founded in fiction and falsehood.

They were not considered void on account of their novelty, but were left to operate so far as they could, consistently with established principles of law. The feoffment to uses, for example, was not considered as void, but permitted to operate so far as to convey the *legal* estate, although the use could not be executed, nor the manifest intention of the parties carried into effect, at law.

The remedy for this substantial defect, we know likewise, was an assumption of power in the courts of equity, to compel a performance of the trust or intention of the parties according to equity and good conscience.

*At June term 1792 at Ipswich, judgment was rendered as of May term 1792 at Plymouth, that the tenants were not guilty of the disseisin complained of.*

---

[1] See *Chamberlain* v. *Crane,* 1 N. Hamp. R. 64.